Good morning. May it please the court. How come we have such a division over there? Okay. May it please the court. Victor Villalmontes on behalf of Plaintiff's Appellants. Arizona state law, and that's the central issue here, says that anyone with authorized presence under federal law is entitled to a driver's license. Prior to DACA, Arizona allowed anyone with a federal work authorization, that's an EAD, to get driver's licenses. Prior to DACA, Arizona allowed anyone with deferred action to get a driver's license. After DACA, Arizona changed its tune. And Governor Brewer made no secret about why she did it. She said that it was her opinion that DACA recipients were illegal people. And now, Arizona's policy with regard to driver's license disregards federal work authorization and disregards the fact that federal law designates deferred action recipients as authorized under federal law. When this issue came before the court, or the district court, the district court made two findings. The first was that deferred action recipients are authorized under federal law to be present in the United States. But then it went on to say that Arizona was free to depart from that and could deny driver's licenses to individuals based on their rejection of federal immigration law. And that was air. One of the problems I have here is that, to some degree, your argument seems like a verbal one. That is, Arizona has chosen to articulate its standard as authorized under federal law. Suppose they had said, our standard is we're not going to give a driver's license to anyone who does not have permanent residential status in the United States. We just don't want to give it to anybody who's only here temporarily. Would that be okay? Your Honor, first, that's not the record in this case. I know, but what difference does it make what they call it? Because under state law, they've chosen a federal immigration designation, and that's their statute. They've chosen to say that people with authorization under federal law to be here are the ones that are entitled to driver's license. What about my hypothetical? Excuse me? What about my hypothetical? Well, that's an entirely different question. I understand it's different. That's why it's hypothetical. I'm asking you, what about that? I think it would still present problems under both preemption and equal protection. The preemption problem is that they're taking the group of people who are authorized under federal law to be here and burdening only one subgroup of those people, the people with authorized presence. In addition, because particularly with DACA recipients and EAD recipients, driving is essential, especially in Arizona where the record reflects that 9 out of 10 people drive to work. But those are substantive problems. In other words, you begin with the notion that the problem here is that they're using a different classification than the federal government. But that's not really the problem. That's why I have a problem with the notion that you have, that there's something about the fact that they use the term authorized by federal law as being the problem. I mean, your real problem is that they are denying driver's license substantively to people who the federal government says have a right to be here and to work here, and they're impeding that process, i.e., their ability to work here. I mean, that's your fundamental problem, isn't it? No, Your Honor. That is a fundamental problem, and that's one of the three conflicts that we do articulate. But I want to emphasize the first two. And that is that states and localities can borrow immigration designations, but when they do that, they have to follow the federal lead. They can't deviate from them. And that's exactly what Arizona has done here. They've borrowed an immigration designation. They've borrowed people. But why aren't they essentially saying by authorized? Federal government can mean what it wants by authorized. But what we mean is having a legal status, not simply being allowed to stay on in a temporary circumstance, although tolerated and not deported, but not having any permanent legal status. That's what we mean. I think they're hamstrung by the statute there, because the statute says authorized presence under federal law. It doesn't say authorized presence as we defined it or as anyone else defined it. And I don't think they could do that. Is it a pyrrhic victory if you want to knock around and ask to rewrite the statute? Well, right now our plaintiffs are being denied a driver's license because Arizona is not applying the standard in their statute, and they're violating federal law. I don't view it as a pyrrhic victory if we get an injunction allowing our plaintiffs to get driver's licenses. I don't know what the legislature would do. I don't know what the governor would do. Let me back up for a minute and ask. You won substantively in the district court on the equal protection issue. Now they have expanded the exclusion. We haven't had any briefing, substantive briefing, on whether you still would argue. I don't even know whether you would still argue that that's still an equal protection argument. I understand that you, all that I know you've said about this is that we shouldn't even be looking at that provision, that change. But assuming we don't agree with that because we tend to do that all the time. And not only that, that would be another pyrrhic victory because this is only a preliminary injunction. So obviously you would, at the permanent injunction, you'd take the new ruling into effect. So should we be having briefing on the equal protection, substantive equal protection argument with regard to the new policy? And also I gather there's a mootness argument which you dealt with briefly but not very much. What do we do with the change? Well, my view is that you can do is to take life on the installment plan. Well, that's part of it. Let me clarify. I understand part of your position is it doesn't matter, it's all preempted. In fact, your preemption argument is probably stronger with the change than without it. But that's part of your argument, right? That's right. And let me explain to you why the equal protection argument that the district court found is just as viable today as when the district court found it in May. There was two irrational bases that the district court pointed to. One is that there were people with federal work authorization who were getting driver's licenses and some that weren't. DACA people weren't, other people were. And that very same irrational distinction still exists. They've only put in some people who have work authorizations but no legal status but not all of them. That's right. And, for example, people who are in withholding of removal or cancellation of removal, people who are actually in deportation proceedings can still get driver's licenses today under Arizona's policy and DACA recipients. And people who are pending asylum applications, I assume. That's right. And others, there are others. So it's just they've only wrapped in all the deferred action people but not... Your Honor, if I may, they haven't even done that. So the second irrational discrimination that the district court pointed to, and these are related but they're two distinct irrational discrimination, is that some deferred action people were getting licenses and some weren't. That's still the case today because VAWA self-petitioners, some of whom are categorized in the C-31 classification, still can apply and get driver's licenses today. What kind of people? I'm sorry. VAWA self-petitioners. What's the VAWA? Violence Against Women's Act. Oh, yes. And so I don't know if they intended and I don't know what their reasoning is but they've still got the same problem. The more people you bring up, the more people they've got to exclude. And so in my view, the district court made its holding. There's nothing before this court that suggests that anything has somehow changed or mooted. The same irrational distinctions exist. If you'd like us to... But don't we need briefing on that? That's what Judge Berzon is really asking. We're happy to provide briefing. But as I said, the two irrational distinctions are still there. EADs, some EADs recipients get them, some don't. Some deferred action recipients get them, some don't. Okay, that's helpful, but we still might need briefing. And we're happy to provide it, Your Honor, if you feel it would be helpful. Let me first turn to the supremacy clause claim. We've talked about that a little bit. You know, supremacy clause claims can be very intricate and complex, but this one really isn't because Governor Brewer has said, we disagree with the federal government's designation that DACA recipients have authorized presence, and that is a straightforward conflict. In addition, that same act leads to a second illegality. The state is interfering with the federal executive's discretion and prerogative with regard to immigration enforcement, and that interference is one that the Supreme Court said in Arizona v. U.S. has a preemptive effect. Now, but in fact, the federal statute does not require that anybody be granted driver's license. It does require that they be allowed to work when they're here, but it doesn't in terms require that they be granted driver's license. So the discretion, explain to me exactly how the federal discretion to have the people stay here and be allowed to work is being interfered with. Those are two separate points, though. We've got a – I think you're sort of getting at our third conflict point, but let me speak to the second one because I may not have articulated that very well. The discretion that the executive is exercising is defining who has authorized presence and who doesn't. And Arizona is interfering with that discretion by defining it in a different way, and if Arizona is doing it that way, then, you know, California could do it a different way, New Mexico could do it a different way, and basically the federal executive's – it would be helpful if you disabuse me if it's disabusable. They could also just say, all right, forget that. We're not going to use this terminology anymore. We're just going to say we're not – suppose they said we're not – we're just not giving driver's license to anyone who is an alien and not a legal permanent resident. We're just not doing it. I've attempted to address that earlier, and I think that there's still preemption problems because they're taking the entire universe of people with authorized presence and burdening a subset of them, those who aren't LPRs. But it's a different problem. It's really closer to the third category of problem, right? I agree with that. So that's why I find this one, one in two of your categories, to be so dependent on the particular phraseology of the statute and not really responsive to what the – the interpretation of whatever phrases they choose to use. They don't need to use those phrases. And I would respond that in the statute they say authorized presence under federal law. So they've chosen to borrow this immigration classification, and now they've got to use it. They can't say that they're borrowing it and then do something else. In addition to the conflict arguments, there's another related point that Arizona is constitutionally preempted from making these kinds of immigration classifications. And so the Supreme Court said it in Nyquist, reiterated it in Plyler. This court said it in Lopez Valenzuela. The states have no authority with regard to classifying noncitizens, and that's precisely the authority that Arizona has subsumed here, and that is another independent problem under the supremacy clause. I – your constitutional preemption argument is, I gather, rather narrow. It has to be in that we know that states do have authority. There's – it isn't – you're not arguing that there's constitutional preemption of everything having to do with people who aren't citizens. No, no. And you're not – and we know from Arizona versus United States and many other cases that states have a certain amount of authority with regard to aliens. So what exactly is it that they're not allowed to do? They're not allowed to create their own immigration classifications. That's what Lopez Valenzuela says, that states have no ability to create immigration classifications, that that authority is solely one that the federal government has. And it's part of the singular national immigration scheme, and it's a fundamental regulation of immigration. It's what the district court said in Farmer's Branch. It's what the district court said in JICA, and what the district court said in LULAC. And also Merton made the same holding, but in the context of finding something that did follow the federal lead. In addition, I also want to touch on the irreparable harms where the district court made mistakes. The fundamental mistake is the district court said that this policy was unconstitutional and then allowed Arizona to keep enforcing it. And the Second Circuit and Fourth Circuit have already said that equal protection claims are irreparable. And in the Ninth Circuit, there's a general rule that constitutional violations are generally irreparable. And that rule has been announced in the Fourth Amendment context, in the due process context, in the supremacy clause context. And the Ninth Circuit has come very, very close already to saying it in the equal protection context. And now is the appropriate time to make that designation. In addition, under Ninth Circuit authority, you should be looking at these irreparable harms cumulatively. So you start with the constitutional harms of the supremacy clause violation and the equal protection violation, and then you add on top of that the individual harms of the plaintiffs being denied driver's licenses, having their career stunted, having their ability to visit family stunted, having their own personal independence stunted because they don't have a car to get anywhere, and the stigmatic harm from being the target of this discrimination. And the last irreparable harm I want to touch upon. And they're here legally under federal law. That's right, Your Honor. The Congress has said it. The BIA has said it. The DHS has said it. Obviously, Arizona is going to take all that on. They're going to say Congress has never said that these people are here illegally. And what they've said is that the federal government executive is authorized to decide who they're going to deport and who they're not going to deport, and they can authorize people to stay temporarily, and they've done that. And that is kind of somewhat backdoored to the statute, but you can get that out of the statute. But they're not here illegally in the sense that they have any status. If the federal government decided to throw them out tomorrow, they could. They're here at the discretion of the executive. That's right. But Congress has said that they do have authorized presence, and they said it in the context of the REAL ID Act, which, as the Court knows, is in the context of driver's licenses. And the last irreparable harm I want to touch upon is one that this Court recently recognized in Valle del Sol, and that is that ADOT had to redirect resources because the governor's and ADOT's illegal acts interfered with their mission, and they were unable to do the outreach to student immigrants. They were unable to do the voter registration drives. They were unable to do the advocacy in favor of the DREAM Act, and they were unable to do all of those things because they were spending 4 to 15 hours a week dealing with the consequences of the governor's illegal acts, in no small part because a significant percentage of their membership are DACA recipients. And with that, unless there are further questions, I'd like to reserve some time for rebuttal. Thank you. May it please the Court. Timothy Berg of Fenimore Craig on behalf of the defendants. The issue on review here today is whether the district court abused its discretion in denying plaintiffs' request for a preliminary injunction. The standard of review is very important here. As this Court said in Cottrell, it will not reverse the district court denial of a preliminary injunction so long as the district court got the law right, even if the court of appeals would have reached a different conclusion so long as the district court did not clearly error in its factual determinations. This is a highly deferential standard of review. Do most people whose driver's license was taken away from them think they were irreparably harmed, not to have it for even relatively for a year or so too? Your Honor, the record here and the judge's conclusions based on the record before him are to the contrary. What the record establishes is that the plaintiffs individually all drive. They drive to school. They drive to work. They drive in their daily life. I thought at least one of them said he stopped driving and others of them said that they didn't drive very much and that they couldn't drive. I mean, and that they're driving illegally, and I understand there's a whole discovery dispute about that question. But, counsel, isn't it right one of them said he's not driving? I think one of them said he drives less. One of them said he's taking the bus several hours a day to get to work. Well, again, Your Honor, it would be our position that there's no constitutional right to a single form of transportation to go to work. Well, I think it's important to get the records straight. The fact that I have to ride a bus and – I'm sorry. I think it's important to get the records straight. Absolutely, Your Honor. All right. I think if you look at the record here, the vast majority of the plaintiffs when they were deposed said they either drive themselves in their own car or another car. They have somebody drive them. One fellow said he stopped driving, but I believe he still is able to get places either by public transportation or by having someone else drive him. The trial court, which is the place in which these sorts of factual determinations should be sorted out, concluded that there wasn't irreparable harm here as a matter of fact. The kind of harms that we're talking about, having to drive – having to have someone else drive you, driving someone else's car, driving your own car, as a practical matter, plaintiffs don't suffer the level of actual harm. What level of actual harm is required? Irreparable harm. They do because they're living in fear all the time. Don't you understand that? Your Honor, that's what it's all about. Your Honor, let me ask you this question. Absolutely, Your Honor. Are DACA recipients, are they authorized to be present in the United States under federal law? No, Your Honor, they're not. There's nothing in the INA that – That's just simply not true. Well, what they are is they are in this country illegally and the executive has decided – That they're authorized to be present in this country under federal law. Again, I think that phrase is ambiguous, which is one of the reasons – to go back to Judge Berzon's questions, the question of what the Arizona statute means isn't probably as clear as plaintiffs think it is. They are not, Your Honor. What they are is they are here in violation of federal law. Isn't that phrase authorized to be here in the federal statute? I don't believe it's in the INA, Your Honor, no. I thought it is at least in the REAL ID Act. It is, but again, in the REAL ID Act case, Your Honor, it's clear that that only applies to states that accept the REAL ID Act and Arizona has not participated in it. But in terms of whether they're authorized, whether you're required to do it is not true, but whether they are authorized to be here, the REAL ID Act says, for example, that it is valid during the period of time of the applicant's authorized stay in the United States, and if there's no definite end to the period of authorized stay, a period of more than one year, and that's referring to people of this variety. So they are authorized to be here in terms of the federal statute. They are not authorized to be here under HHS's policy determinations and they're not going to give them certain kinds of health benefits. They're not authorized to be here under the INA. Arguably, Your Honor, the REAL ID Act... Isn't the accurate way to say that they are authorized to be here but they can't get certain benefits? No, I would say, Your Honor, the proper way to say it, and again, some of this is a semantical argument and I recognize that. They are here illegally. The Secretary has decided that she is not going to pursue removal of people who are here illegally in this category. They may, for purposes of the REAL ID Act, be authorized to be here, although I don't think that applies across the board when you're talking about states that haven't adopted the REAL ID Act, but for purposes of the INA and for other federal purposes, including HHS, they're not authorized to be here. Part of the reason this is such a mess, with all due respect, Your Honors, is that the federal government hasn't spoken consistently and clearly with one voice about this problem. And plaintiff's real remedy in the end is to have Congress do that. What is the purpose of the Arizona law that we're involved in here? Is that purpose to regulate immigration? Not at all, Your Honor. Okay. It's to regulate who drives... Tell me what is its purpose, then. It is to regulate who drives in the state of Arizona. Driving is a privilege in the state of Arizona, and the state has chosen the categories of people to whom it extends that privilege. But the purpose of the statute is not to regulate immigration. It's not to make people... Could Arizona say that legal permanent residents can't get driver's licenses? I believe, Your Honor, the answer is that you could pass a statute like that under Supreme Court jurisprudence because legal permanent residents are a suspect category. You would be unlikely... That case would be unlikely to... Resident aliens are a suspect category. If you tried to deprive resident aliens of driver's licenses, you would end up in court under strict scrutiny, and I suppose the state could try. It would be unlikely to succeed. I can't think of any cases I've ever read where the... Resident aliens are a suspect class. Is that what you said? Yes. Yes, Your Honor. I think under Supreme Court cases cited in both sides' briefs, they are. But the Supreme Court has said people who are here illegally are not a suspect class. The Supreme Court expressly has held that in Plyler. But the point, Your Honor, is before you get to any issue of preemption, you have to deal with the issue of likelihood of irreparable harm. What Winter says is that in order for a preliminary injunction to issue, you have to show a likelihood of irreparable harm, and the evidence here didn't show that. It showed that by and large, all of the plaintiffs are able to get to their jobs, to their schools, get on with their lives. They drive themselves without licenses. They have other people drive them. They take advantage of public transportation. This is simply not the level of harm that rises to an irreparable harm. If somebody took your driver's license away and told you to take the bus, you don't think it would be irreparably harmed? No. I think I would be horribly inconvenienced, Your Honor, but I don't think I'd be irreparably harmed. So where are you getting this incremental, this notion that you have to be somehow deprived in some level of deprivation as opposed to irreparably? You're harmed and it's irreparable. Why isn't that good enough? Your Honor, because I think if you look at the cases in this circuit, you're not talking about a trivial irreparable harm. I mean, I can come up with a harm. Why is that trivial? Well, I'm not saying this one is. What I'm saying, Judge Pregerson, is that in order to justify a preliminary injunction, the harm has to be irreparable, but it also has to be something serious. So is this trivial or not? I don't know why I'd use the word trivial, Your Honor, but what I would say is it doesn't rise to the level of seriousness to mandate the granting of a preliminary injunction, or at least it was in the discretion of Judge Campbell, as the trial judge in this case, to conclude that the harm wasn't sufficiently irreparable and sufficiently serious to mandate the issuance of a preliminary injunction. The case is going on below and there will be a remedy at the end. We can find that he abused his discretion. I'm sorry? That he abused his discretion. You certainly can make that decision. I think that would be incorrect on this record. Well, I don't agree with you about that. So, Your Honor, I understand. So are you going to argue the preemption issue? Yes, I am. Let me hear your read on the current status of the equal protection question. Do we need briefing on that? I think what you ought to do, Your Honor, if you have a concern about it, is send it back down to the district court. Why? Well, again, to the extent you need to know more facts about who this affects, who's in the categories, who's not. Those aren't facts. Those are legal issues. It's fine. We would certainly be willing to file supplemental briefing. The other alternative we would suggest is to let the district court do whatever fact-finding it needs to do and then send it back to you. If you could tell me what facts you're talking about, I might be influenced, but so far I haven't heard a fact. What would be a fact? It seems to me that there is additional material that, again, may not be completely legal in nature as to which types of immigrants fall into which categories. It's all going to be in regulations. It has to be. All right. Okay. You asked me about preemption. I have two points on one of them. Let me ask you this. The governor herself said that she implemented her policy to ensure there would be no driver licenses for illegal people. That's the policy. Your Honor, the policy is the policy. Isn't that what she said? No driver license for illegal people. Governor Brewer was quoted in the paper as saying that. I wasn't present. I can't tell you if that's the exact quote. Secondly, the policy at issue is ADOT's policy decision not to issue the driver's licenses to this class of immigrants and the governor's executive order. I think that's what was in front of Judge Campbell to review, and that's what's in front of you to review Judge Campbell's decision on, not some statement that may have been quoted or misquoted in the newspaper, Your Honor. Counsel, I'd like to go back to irreparable harm for just one minute. Okay. Because I take from your arguments that you think the district court held that this harm wasn't sufficiently serious and that it's not irreparable. And I'm looking at the order on page 33, and the trial court has italicized the word irreparable. As the Supreme Court has explained, the key word in this consideration is irreparable. It goes on at some length about whether the harm is irreparable, but I'm not so sure that I agree with you in response to Judge Berzon's question that he really stressed the severity of the harm. Where do I find that? I don't disagree with Your Honor's reading of the order. What I think is implicit in the idea that a harm is irreparable is that it's serious. I don't think it's a separate consideration. I think if I suffer a relatively minor injury, someone breaks a piece of property of mine that can't be replicated, that isn't the kind of irreparable harm. I mean, it's arguably irreparable because the painting can't be duplicated or something, but it isn't the kind of irreparable harm that warrants an injunction. I think what Judge Campbell concluded was- You're not using that property, but he's trespassing. You don't think people have gotten injunctions on that every day of the week? In fact, for 400 years? Your Honor, they may well have, but again- It's not even bothering you, but it's your property. The discretion is vested in the trial court to decide as a matter of fact whether there's irreparable harm here. What Judge Campbell did was listen to the evidence that said people are driving. They're driving their own cars. They're driving other cars. But there's also evidence that says I can't get jobs because I don't have a driver's license. Your Honor, that wasn't the testimony. Most of these folks are- I read it. I'm sorry. I'm not talking about most of them, but there was somebody who said there are jobs I would apply for, but I can't because I don't have a legal driver's license. And I think the record's clear that person was working in a job at the time the deposition was taken. So what? So because she's not starving, that she doesn't have irreparable harm? Your Honor, I can't get a license to practice medicine in the state of Arizona or California because I haven't been to medical school. I would suggest to you that- Oh, come on now. Not every harm- Your Honor, what Judge Campbell decided, and I think correctly, is that when you look at the totality of the circumstances that the plaintiffs find themselves in, that the harm isn't irreparable. That's different, counsel. The reason I asked you to call your attention is a minute ago you were saying it's not sufficiently serious. And then you said that the district court made that finding. And so my question for you is, is it your position that the deprivation of a constitutional right is not sufficiently serious? No, it is my position that it is not automatically irreparable. And in a case like this, it is not irreparable. My question is whether it's irreparable, not serious. Yes, Your Honor, although I think irreparability has a concept of seriousness in it. But yes, you are correct, the concept is irreparable. And I think what Judge Campbell found is that because the plaintiffs were able to function in their everyday life perfectly well, with relatively minor inconvenience, that wasn't irreparable harm. That's a better way of saying what I tried to say before. I appreciate the clarification. And I apologize, Your Honor. On preemption. First, you don't need to reach the preemption issue here. Plaintiffs didn't get a preliminary injunction in this case, not because they didn't show that they were going to succeed on the merits of one of their claims. We know that. Now go on to preemption. We've already been over that for 15 minutes. Okay. Your Honor, the policy is simply not preempted. Plaintiff's argument is largely that the statute creates immigration classifications that are inconsistent with federal law. And that's simply not correct. The statute doesn't purport to regulate entry, exit, or who can stay here. And those are the things that the federal immigration law preempts. If we had passed a statute which said a certain group of people need to leave the state of Arizona The most direct connective, though, is that these people have, because of their status, they also have work authorization. Yes, Your Honor. And that is a federal permission to work, which we know from Arizona versus United States and other cases, the states cannot supervene. And so the question is whether the connective between that and the driving on this record is sufficient to demonstrate that their work authorization is essentially being interfered with. I guess I would put it to you differently, Your Honor. I think what plaintiffs are really asking you to do is preempt the state's driver's license law on the basis of a federal discretionary decision not to prosecute a certain group of immigrants. And to give them work authorization. That's what I'm trying to focus on. It's not just not to deport them. It's to say, and, which of course makes sense. You don't want these people staying here and not working. So they're saying you have the authority to work here. And the state, I mean, do you agree that Arizona could not pass a law saying that these people are not authorized and so they can't work? I agree with that, Your Honor. Okay. So you couldn't say they can't work. And the question is whether you're functionally saying that by saying they can't drive. Your Honor, there's nothing in this record that would support the conclusion that that's true. Wait. That the questions are true? Judge Berzon's point is that that's the issue. Do you agree that's the issue? No. I'm sorry. Could we start? I've lost track of the question, Judge Christian. I apologize. Judge Berzon, would you? Well, Judge Berzon's question has to do with the connection between the right to work. You agree that Arizona couldn't say these folks can't work. I agree with that, Your Honor. And she's positing that the issue is the connection between depriving them of driver's license and the ability to work. Do you agree that's the issue? I don't. Not put that way, Your Honor. What I guess I would say is. For example, in the Eleventh Circuit case, there was a statute saying they couldn't contract. And what the Eleventh Circuit said is, look, when you say somebody can't contract, you're essentially saying they can't be here. Right? Yes, Your Honor. All right. This is a lesser deprivation. I understand that. But why isn't the connective the same connective? When you're saying somebody can't drive, you're essentially saying they can't work. In Arizona, given the realities in Arizona, they can't get to work, and many people can't get jobs without a license. Your Honor, first of all, I don't think you can include that on this record. I think, in fact, this record will lead you to the opposite conclusion. Well, they can only do it by driving illegally. Most of the plaintiffs are working and driving and functioning perfectly well. Well, if they drive illegally and put themselves at risk of being prosecuted for driving illegally. I understand there's a, and I don't particularly want to spend the time in this hearing argument dealing with this discovery issue. But my understanding is that that was essentially directed at the irreparable harm issue. But substantively, the fact is that they are putting themselves at risk of being sanctioned if they do drive. So. And again, Your Honor. So the policy. First of all. Isn't that true? It is true that if you are stopped for some reason driving without a driver's license, you are subject to a civil penalty in Arizona. And also to a possible misdemeanor. You keep saying that, but it's in the, I read it. The statute says that. Well, the way I read the statute is different, Your Honor. But certainly no one is, I don't think anyone is saying here that if someone is stopped without a license that there isn't a problem. Normally, in Arizona in most cases, if you're stopped without a license, and I was one day because I happened to pick the wrong wallet out of my closet. You don't get fined or prosecuted. For many reasons, it seems strange for the state to be standing up here and saying, well, this is all not a problem for people who work because they can just drive illegally. I mean, A, there are problems for everybody else in your state if you have people driving around illegally. And there are problems for them if you have people driving around illegally. And none of that is disputing the connection between driving and work. You're just saying, well, they can just break the law. Your Honor, I think there is a line between what the federal government has chosen to preempt and what it hasn't preempted. And at least in the INA and in these cases, the federal government has preempted who can be here and who can work here. There's nothing in the INA, there's nothing in the DACA policy, and everybody's had a chance to do this, that says the state, we're preempting the state's ability to decide who to give driver's licenses to. And the connection you're talking about, you're assuming. It's a factual matter, and on this record, you can't make that assumption. If you want to remand this case back to Judge Campbell and say, we need you to have a factual hearing on the degree to which the inability to get a driver's license deprives somebody of the ability to use their federally authorized work authorization, I think that's something that the district court needs to sort out as a matter of fact. I don't think this court should assume it's true just because it seems intuitive to you that it might be. We shouldn't assume it's true because it is true. Well, I would say because it's intuitive to you that it might be, Judge Preckerson, with all due respect. With all due respect, it is true. Well, with all due respect, Your Honor, we can disagree about it. I don't need your respect. Well, you have it anyway, Your Honor. That's all right. I'll give it back to you. Thank you. I appreciate that. Okay. The governor in one of her whereases says the USCIS, that's U.S. Customs and Immigration Service, has confirmed that the Deferred Action Program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicant. Yes, Your Honor. And where has the USCIS so confirmed? I believe, Your Honor, in the questions and answers that both sides have cited to, that we've cited to you in the briefs, there's a specific statement by Governor, I'm sorry, Governor, I don't want to call her Governor, Secretary Napolitano, saying that this isn't a substantive law change. It doesn't give anybody the Deferred Action Program, DACA program, isn't a substantive law change. It doesn't give anybody substance rights and doesn't give them legal status. That's exactly what Secretary Napolitano said. That's, of course, true. And it's also true of people who are here pending asylum adjudications and people who are here having been released from detention. And there's huge categories of people who are here on various kinds of authorized statuses, meaning they're not going to get deported and many of them are eligible for work authorization, but they are not, they don't have a legal status, meaning they don't have any right to stay here if the government changes its mind. Your Honor, I think, and this may be why we should brief the equal protection issues to you, because most of those folks, if not all of them, are here subject to some statutory or regulatory authority that gives them a different status than the deferred action plaintiffs in this case. And that's something that got briefed in part in front of Judge Campbell. And I think if the Court is going to reach that issue, you definitely ought to ask us all to brief it because what you have in front of you wouldn't be a complete brief. But in terms of what you just read from Secretary Napolitano, they're not any different. They don't have any legal status, meaning they don't have any right to stay here. They don't have legal status, Your Honor. In some cases they have statutory authority from Congress to be here for some reason or another, and we would contend that's different from the DACA recipients who are here only pursuant to a decision by Secretary Napolitano not to pursue deportation against them. Okay. Again, we would ask the Court to affirm the denial of the plenary injunction below. There is insufficient evidence of irreparable harm here. The Court should not reach the preemption issue, but if you do, you should conclude that the statute is not preempted. Thank you all very much. Thank you. In rebuttal, I'd like to speak to our third conflict preemption point, which was the subject of significant back and forth. You don't seem to like that one very much. You seem much more enticed with these questions about categorization. I wanted to cure that implication. I wanted to make sure that there was different theories, that we had espoused the three. Now I want to talk about the third one, because the evidence in the record is that 87%, virtually nine out of ten people, drive to work in Arizona. There is a one-to-one correlation in the state with the sprawl and the size of Arizona, that if you're going to work, you need a car. And the plaintiffs have established that because though they don't drive to see their family, though they're not meeting their career goals because there's jobs they have to turn down, there's things they can't do, even then, when they're saying, I'm only going to drive in a very, very short area around my house, they have to drive to get to work. All the record in the evidence establishes that, and that is a preemption problem and a conflict that they can't cure, no matter how they write the statute. The last thing I'd like to say is that this court, in its Valle del Sol decision, pointed to this conflict that Governor Brewer was designating DACA recipients as unauthorized under federal law and pointed to the potential problems that that would cause under Arizona's harboring provision. And that provision's enjoined, so unless that injunction comes off, that's not really a concern today. But what is a concern is that Arizona has a law that requires local law enforcement to investigate the immigration status of anyone deemed to be undocumented or not lawfully present. And so now you have Governor Brewer's executive order saying that they're not lawfully present and local law enforcement has the obligation to investigate that. Well, there are two options. They can say the governor's wrong and we're not going to listen to it, or they can arrest people based on Arizona's independent decision that these individuals do not have authorized presence. And so not only is this a problem for driver's licenses, this opens up a whole can of worms and a whole set of problems for Arizona and beyond. And in addition to this Arizona-specific problem, you've got the problem that if Arizona gets to define who has status and who doesn't under federal law, you're going to have every locality and every state with wildly different definitions and someone's going to be unauthorized in one place, unauthorized in another, and that will terribly undermine the uniform immigration system that we have in place. Counsel, before you leave the podium, in addition to your constitutional harms, I recognize that you're trying to forcefully stress that the deprivation of a constitutional right is irreparable, but you also listed the ability to move around throughout the state, the ability to visit relatives, having career-stunted stigma. So as to that basket of harms, my question is what case law do I look to? What's your strongest authority where anybody's found that those are irreparable? Your Honor, can I have a second to go through our brief? Well, irreparable to me always means it can't be fixed after the fact. So the question really isn't whether it's irreparable, it's whether it's harm, a cognizable harm. It's a cognizable harm that is non-compensable. There are cases that talk about whether it's an economic damage, and these clearly are not, but I'm just trying to figure out if that's what you mean or what do you mean when you look to this other category of harm. That they're non-compensable, that there's something that can't be fixed with monetary relief. And the case that I have been pointing to is the monetary mechanics case, which says that equal protection harms are non-compensable. But she was asking something different. But doesn't Bell v. Burson say something about the importance of being able to drive? Not in the context of irreparable harm, but that it's a serious harm. If it's a harm, the question is whether it's a compensable harm. That's right. We do cite the cases talking about the centrality of driving, really, for living. The focus of this hearing has really been on the connection between driving and working, but it's actually far broader than that. Thank you. Okay. Thank you. And this matter is submitted. And the court will recess until 9 a.m. tomorrow morning. Thank you. All rise. The court stands in recess until 9 a.m. tomorrow morning.
judges: Pregerson, Berzon, Christen